# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| BETTY WILSON and MICHAEL McMANN, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 2:14-CV-04220-NKL ) |
| CITY OF COLUMBIA and MIKE MATTHES, | ) ) ) ) |
| Defendants. | ) |

## ORDER

Pending before the Court is a request by Plaintiffs Betty Wilson and Michael McMann to extend the temporary restraining order issued by this Court on August 22, 2014. Also pending is a request by Opus Development to end the temporary restraining order. The City of Columbia takes no position on the temporary restraining order. Because the Court heard evidence at a hearing on September 4, 2014, the Court treats Plaintiffs' request as one for preliminary injunction.

At the September 4, 2014 hearing, the parties presented extensive argument, as well as affidavits from Columbia City Manager Michael Matthes; Joseph P. Downs, Senior Director of Real Estate Development for Opus Development; and Plaintiff Betty Wilson. Based on that record and the briefs and affidavits submitted by the parties, the Court concludes that a preliminary injunction should not be granted. While the Court accepts as true the statement of facts contained in Ms. Wilson's affidavit which is largely consistent with the affidavit of the City Manager, the Court finds that Plaintiffs are

unlikely to succeed on their legal claim that their First Amendment Rights are being violated because the City of Columbia has agreed to issue permits to Opus Development to build a housing project in downtown Columbia.

The facts are complicated but the Court will give a summary of the most salient ones. In the Spring of 2014, the City passed an ordinance adopting a Development Agreement between the City and Opus Development in which Opus agreed to pay $450,000 to the City to reduce the impact its project would have on infrastructure in downtown Columbia. In December 2013, the City had indicated its sewer system for downtown Columbia was already "100 percent" utilized. And in the Development Agreement, the City and Opus acknowledged that there were inadequate "water, fire protection, electric, storm water and sanitary sewer facilities" to serve the proposed Opus Development. The City in fact had put several other housing projects on hold, pending resolution of the sewer capacity problem.

After the passage of the ordinance approving Opus' agreement with the City, a group of citizens, pursuant to their right under Columbia's City Charter, circulated a petition to repeal the ordinance. By law, if enough signatures are collected (in this case about 3500 signatures), the ordinance must be referred to a vote of the people to determine whether the ordinance should be repealed. Until the vote, the ordinance cannot be enforced. However, the City Charter also provides that if the City voluntarily repeals the ordinance, then the matter will not be referred to a vote of the people.

On April 15, 2014, after Columbia residents submitted their referendum petition to the City Clerk with what appeared to be sufficient signatures, Opus Development

threatened to sue the City for five million dollars for breach of contract if the City did not declare the petition invalid. The City promptly declared the petition insufficient but additional signatures were submitted later by the organizers of the petition effort and eventually the petition was certified on May 29, 2014.

In the meantime, the City passed a second ordinance adopting a second Development Agreement between the City and Opus Development, again requiring Opus to pay the $450,000 for infrastructure improvements. Columbia residents again circulated a petition to repeal the ordinance by a vote of the people. That petition was certified as sufficient on July 31, 2014. Eventually, however, after the petitions were certified, the City voluntarily repealed both ordinances. In other words, Plaintiffs and other residents who signed the petition were able to achieve what their petitions sought—repeal of the two ordinances approving the Development Agreements.

After repealing the Development Agreement ordinances, the City did an about face and decided that there was no longer a problem with its downtown infrastructure, at least for the Opus project. The City therefore agreed to issue permits to Opus to proceed with the project even though Opus had no obligation to pay for infrastructure improvement, the Development Agreement ordinances having been repealed. The City concluded there was no longer an infrastructure problem because the City in June of 2014 authorized some infrastructure improvements for the downtown sewer. But there is no evidence that any of those sewer improvements would be in place by the time the Opus project opened. The City also adopted resolutions rather than ordinances to authorize Opus to proceed with necessary tasks for its project. The referendum process permitting

3

a vote of the people does not apply to resolutions—only ordinances. In short, the City intentionally avoided passing any ordinance concerning the Opus project for the express reason that it would rather repeal the ordinances than have a vote of the people which would delay the Opus project and possibly result in a lawsuit by Opus.

Understandably, the Plaintiffs and the thousands of Columbians who signed petitions are upset that the City is allowing Opus to proceed with its project when it is clear that the infrastructure problem in downtown has not improved sufficiently to address the impact of the Opus Development. They justifiably feel disappointed that their arduous petition efforts were thwarted by the City and Opus. However, bad behavior or bad policy do not equal a violation of the law. Plaintiffs' legal claim is that their right to petition the City and their right to speak have been violated because the City has used procedures other than passing an ordinance to permit this project to proceed. Plaintiffs claim that the City did this to avoid the referendum process. But all the procedures used by the City are authorized by City Charter and ordinances. The City had the option to voluntarily repeal the ordinances approving the Development Agreements rather than sending them to a vote of the people. It did so. It had a right to issue permits under certain conditions and the Plaintiffs have not shown those conditions do not exist. The City has a right to adopt resolutions rather than ordinances. Even though the City has decided to avoid the referendum process by not adopting an ordinance, there is no First Amendment right to have the City only proceed by ordinance. Furthermore, rather than thwarting the objective of the referendum process—the repeal of the Opus

Development Agreement—the City voluntarily repealed the ordinance making it unnecessary to have a vote of the people to repeal the ordinance.

Plaintiffs' referendum efforts only addressed the ordinances approving the Development Agreements. Those Development Agreements are not being relied on by the City to issue any permits to Opus. They have been repealed, and there is simply no procedure in the City Charter that permits the citizens to use the referendum process to challenge all actions taken by the City. Plaintiffs were permitted to exercise their rights to challenge the ordinances at issue and in fact did so successfully. While Plaintiffs have not stopped the City from issuing permits to Opus, the right of free speech and the right to petition do not guarantee outcomes. Therefore it is unlikely that Plaintiffs can succeed on the merits of their First Amendment claim—the only claim in front of the Court.

Accordingly, Plaintiffs' request for a preliminary injunction is denied.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: September 5, 2014  
Jefferson City, Missouri